**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**AT PADUCAH**

**THERESA D. LANDERS**
    Plaintiff

v.                                                                                                                                **No. 5:07CV-00051-J**

**MICHAEL J. ASTRUE**
    Commissioner of Social Security
    Defendant

**MAGISTRATE JUDGE'S REPORT**
**and RECOMMENDATION**

This matter is before the court upon the plaintiff's complaint seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). The plaintiff is represented by Dennis Fentress. The fact and law summaries of the plaintiff and the defendant are at Docket Entry Nos. 11 and 12, respectively. This matter has been referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636.

The final decision of the Commissioner was rendered on July 10, 2006, by administrative law judge (ALJ) Randolph Schum. In support of his decision denying Title XVI benefits, Judge Schum entered the following numbered findings:

1. The claimant has not engaged in substantial gainful activity at any time relevant to this decision (20 CFR 416.920(b) and 416.971 *et seq.*).

2. The claimant has the following severe impairments: lumbar and cervical degenerative disc disease; carpal tunnel syndrome; and depressive and anxiety disorders (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to occasionally lift and carry 20 pounds and frequently lift and carry ten pounds. She can sit for six hours in an eight hour workday and stand/walk for six hours in an eight hour workday. She can occasionally climb ropes, ladders, and scaffolds and crawl. Handling with the left arm is limited to occasional. She should avoid concentrated exposure to vibration. She has moderate limitations in her ability to carry out detailed instructions, to make plans independently and set realistic goals, to deal with changes in the work place, to maintain attention and concentration for extended periods, and to relate to the public.

5. The claimant is capable of performing past relevant work as a maid, custodian, and cashier. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 416.965).

6. The claimant has not been under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR 416.920(f)).

(Administrative Record (AR), pp. 18-25).

## Governing Legal Standards

1. The court has jurisdiction to examine the record that was before the Commissioner on the date of the Commissioner's final decision and to enter a judgment affirming, modifying, or reversing that decision. 42 U.S.C. § 405(g), sentence four. In exercising its "sentence four" jurisdiction, the court is limited to determining whether the Commissioner's controlling findings are supported by substantial evidence and whether the Commissioner employed the proper legal standards in reaching her decision. *Richardson v. Perales*, 402 U.S. 389 (1971). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Kirk v. Secretary*, 667 F.2d 524 (6th Cir., 1981). It has been described as a sufficient amount of evidence "to justify, if the trial were to a jury, a refusal to direct a verdict." *Sias v. Secretary*, 861 F.2d 475, 480 n. 1 (6th Cir., 1988). In determining whether the Commissioner's findings are supported by substantial evidence, the court must examine the evidence in the record taken as a

whole and must take into account whatever in the record fairly detracts from its weight. *Wyatt v. Secretary*, 974 F.2d 680 (6th Cir., 1992). However:

> The substantial-evidence standard allows considerable latitude to administration decision makers. It presupposes that there is a zone of choice within which the decision makers can go either way, without interferences by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.

*Mullen v. Secretary*, 800 F.2d 535, 545 (6th Cir., 1986).

When conducting substantial evidence review, the court is restricted to a consideration of the evidence that was before the Commissioner on the date of the final decision. When the Appeals Council declines to review the ALJ's decision and render a new decision, the ALJ's decision becomes the Commissioner's final decision. *Cotton v. Secretary*, 2 F.3d 692 (6th Cir., 1993).

2. To qualify for supplemental security income (SSI) benefits, a claimant must file a Title XVI application, must have insufficient earnings and other financial resources, and must be under a disability as defined by the Act.

3. Disability determination is a five-step sequential evaluation process, to-wit:

**STEP #1** The claimant must not be engaged in substantial gainful activity.

**STEP #2** The alleged disabling impairment must be "severe." A "severe" impairment is one that "significantly limits" a claimant's ability to do "basic work activities" that are "necessary to do most jobs" such as walking, standing, sitting, lifting, seeing, hearing, and speaking. 20 C.F.R. §§ 404.1521 and 416.921. Only a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience" is "nonsevere." *Farris v. Secretary*, 773 F.2d 85, 89-90 (6th Cir., 1985). Any physical or mental impairment that has more than a

de minimis, or significant, effect on the claimant's ability to work is "severe," and the sequential evaluation should proceed to Step #3. In addition, the "severe" impairment must satisfy the so-called duration requirement, to-wit, the impairment must be expected to result in death or "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. §§ 404.1509 and 416.909.

**STEP #3** If the claimant has a medical condition that meets or exceeds the criteria for an impairment defined in Appendix 1 of 20 C.F.R. Part 404, Subpart P of the regulations ("the Listing"), a conclusive presumption attaches that the claimant is disabled.

**STEP #4** The claimant must not be able to perform his past relevant work either as he actually performed it or as it generally performed in the national economy.

**STEP #5** If the claimant makes a prima facie showing that he cannot perform his past relevant work, the burden of going forward with evidence shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant can perform. *Born v. Secretary*, 923 F.2d 1168 (6th Cir., 1990). The focus of judicial review in Step #5 cases is typically whether the controlling hypothetical posed to the vocational expert reflected all vocationally significant physical and mental limitations actually suffered by the claimant. *Varley v. Secretary*, 820 F.2d 777 (6th Cir., 1987).

**Treating Physician Opinion**

We shall consider the plaintiff's fourth and final contention first, to-wit, "the treating physician's opinion mandates a finding of disability" (Docket Entry No. 11, p. 16). In 1992, the plaintiff underwent lumbar laminectomy for two herniated discs. In 1994, she underwent carpal tunnel surgery on her right hand, and in 2004, on her left hand. Laxmaiah Manchikanti, M.D., has treated the plaintiff for a number of years for chronic back and

4

neck pain. On March 20, 2005, Dr. Manchikanti completed the standard Medical Source Statement of Ability to Do Work-Related Activities (Physical) form (AR, pp. 426-429). Among other things, Dr. Manchikanti found as follows:

    1. The plaintiff can lift/carry 10 pounds occasionally and less than 10 pounds frequently.

    2. She cannot stand/walk for 6 hours in an 8-hour workday but can stand/walk for at least 2 hours in an 8-hour workday.

    3. She cannot sit for 6 hours in an 8-hour workday but can sit for less than about 6 hours in an 8-hour workday.

    4. She can never climb ramps, stairs, ladders, ropes, and scaffolds.

The plaintiff argues that the ALJ erred in declining to give controlling weight to Dr. Manchikanti's assessment. The medical opinion of a treating physician is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record." 20 C.F.R. § 416.927(d)(2). "We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." Id. The foregoing regulatory requirement of giving of "good reasons" is deemed to be a substantial right in the Sixth Circuit that is not subject to a "harmless error" review. See *Wilson v. Commissioner*, 378 F.3d 541 (6th Cir., 2004).

In his written decision, the ALJ rejected Dr. Manchikanti's assessment for the following reasons (AR, p. 21):

> The undersigned has afforded little weight to the evaluation of Dr. Manchikanti which is inconsistent with the objective medical evidence, the level of the claimant's daily activities, and the records of the treating physician. Dr. Manchikanti's records of May 4, 2004, indicate the claimant reported she was looking for work and

5

      Dr. Manchikanti took no exception and did not state any restrictions. Again, on November 15, 2004, she complained of only "intermittent" symptoms. On February 15, 2005, she reported she had "done pretty well" since her prior visit. On November 29, 2005, the claimant again reported she had done well. The objective medical evidence, the claimant's report of daily activities, and the office records of Dr. Manchikanti simply do not support lifting limitations of less than ten pounds, an inability to stand or walk any more than two hours in an eight hour day, and restriction that she never climb stairs or ramps. The claimant repeatedly reported her filing for disability to Dr. Manchikanti (August 27, 2002, August 4, 2004, and February 15, 2005), and the residual functional capacity he prepared appears to be solely on the subjective complaints of the claimant without regard to whether those complaints are consistent with the objective medical evidence and the daily activities of the claimant.

For the following reasons, the magistrate judge concludes that the foregoing reasons cited by the ALJ in support of his rejection of Dr. Manchikanti's assessment were not "good reasons" as contemplated by § 416.927(d)(2) and *Wilson*, supra:

1. There is no incompatibility between Dr. Manchikanti's assessment and his implicit approval of the plaintiff's seeking employment because, as we shall see in the "appropriate remedy" section of this report, infra, acceptance of the assessment would not necessarily preclude a limited range of "sedentary" work with a sit/stand option.

2. The record does not support the ALJ's suggestion that Dr. Manchikanti's findings were improperly motivated by a desire to assist the plaintiff in obtaining disability benefits.

3. There is no evidence in the record that the plaintiff engaged in sustained daily activities in excess of the limitations assigned by Dr. Manchikanti.

4. In completing the assessment form, Dr. Manchikanti stated that his findings were based upon the following diagnoses (AR, p. 427): Post-lumbar laminectomy syndrome, cervical disc displacement, cervical facet joint arthropathy, left carpel tunnel syndrome, and chronic bronchitis. The magistrate judge concludes that the ALJ erred in finding that Dr. Manchikanti's assessed

limitations were based solely upon the plaintiff's subjective complaints without regard to the objective medical evidence.

5. "Occasional" and "frequent" are terms of art in Social Security disability law that mean occurring from "very little up to one-third" of the workday and occurring "up to two-thirds" of the workday, respectively. Social Security Ruling (SSR) 96-9p. The magistrate judge concludes that Dr. Manchikanti's finding that the plaintiff is able to lift a maximum of ten pounds occasionally and less than ten pounds frequently is adequately supported by his diagnosis of carpel tunnel syndrome.

6. Dr. Manchikanti's finding that the plaintiff is limited to standing/walking between two and six hours in an eight-hour workday and sitting less than six hours in an eight-hour workday is adequately supported by his diagnoses of post-lumbar laminectomy syndrome, cervical disc displacement, and cervical facet joint arthropathy.

7. The assessment form did not give Dr. Manchikanti an opportunity to distinguish among the plaintiff's capacities with respect to climbing of ramps, stairs, ladders, ropes, and scaffolds. The form simply asked Dr. Manchikanti to indicate whether the plaintiff can "frequently," "occasionally," or "never" climb. If given an opportunity, Dr. Manchikanti may have indicated that the plaintiff can occasionally climb ramps and stairs but never climb ladders, ropes, and scaffolds. In any event, given the available choices, Dr. Manchikanti's diagnoses adequately supported his finding that the plaintiff should "never" climb.

Because the ALJ's decision failed to identify "good," or persuasive, reasons in support of the ALJ's rejection of the treating physician's medical opinion, this matter must be remanded to the Commissioner for a new decision that comports with *Wilson*, supra. We do not reach the question of whether Dr. Manchikanti's assessment is entitled to controlling weight because the issue of not

of case-dispositive significance. For the reasons indicated below, even if the assessment is entitled to controlling weight, it does not follow that the plaintiff is disabled.

## The Appropriate Remedy

"If a court determines that substantial evidence does not support the [ALJ's] decision, the court can reverse the decision and immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir., 1994). "Sedentary"work contemplates "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledger, and small tools" and generally requires sitting "approximately 6 hours of an 8-hour workday." 20 C.F.R. § 416.967(a) and SSR 83-10. Dr. Manchikanti found that the plaintiff can lift/carry 10 pounds occasionally and can sit for "less than about 6 hours in an 8-hour workday" (AR, p. 427). The magistrate judge concludes that Dr. Manchikanti's finding with respect to the plaintiff's ability to lift/carry is compatible with the requirements of "sedentary" work and that his finding with respect to her ability to sit is on the cusp of allowance of the full range of "sedentary" work. However, Dr. Manchikanti also found that the plaintiff can stand/walk for less that 6 hours but at least 2 hours in an 8-hour workday (AR, p. 426). Therefore, Dr. Manchikanti's findings as a whole appear to allow for a limited range of "sedentary" work with a sit/stand option. Consistent with the foregoing conclusion, in her fact and law summary, the Commissioner states that acceptance of Dr. Manchikanti's assessment from March of 2005, would allow the plaintiff to "perform a reduced range of sedentary work" (Docket Entry No. 12, p. 7).

The undersigned acknowledges that a conclusion that acceptance of Dr. Manchikanti's assessment would not be tantamount to a conclusion of disability is somewhat at odds with the testimony of the vocational expert (VE) that Dr. Manchikanti's assessment would preclude all full-time work because "the restriction of two hours standing and less than six hours sitting would be less than eight hours" (AR, pp. 705-706).  However, the vocational testimony is unpersuasive because it appears to have been premised upon an erroneous belief that Dr. Manchikanti found that the plaintiff can stand/walk for <u>only</u> two hours per workday.  As indicated above, Dr. Manchikanti found that she can sit "**at least** *(emphasis added)* 2 hours in an 8-hour workday"(AR, pp. 705-706).

The following exchange that occurred at the outset of the hearing appears to have foreshadowed our conclusion that acceptance of Dr. Manchikanti's assessment would allow for a limited range of "sedentary" work with a sit/stand option (AR, p. 691):

> **ALJ:**  If you had a job with what's called a sit/stand option where you could sit, stand, walk, lean, stretch, you'd work two hours, take a 15-minute break, work two hours more, take a lunch break, work two hours more, take another break, work two hours more and go home, and during those two hours you could get up or do whatever you wanted position wise as far as sitting, standing, walking, or stretching. Would you be able to do it?
>
> **Plaintiff:** Probably not.

Despite the foregoing suggestion that the plaintiff might be able to perform some "sedentary" work with a sit/stand option consistent with Dr. Manchikanti's assessment, upon examination of the VE, the ALJ presented no such hypothetical.  The ALJ's hypothetical contemplated an ability to perform "light" work.  The magistrate judge concludes that Dr. Manchikanti's assessment would not necessarily preclude all work in the national economy.  Therefore, although the ALJ failed to give "good reasons" for rejecting Dr. Manchikanti's assessment, even if it were entitled to controlling weight, the record does not adequately establish the plaintiff's entitlement to benefits.  A remand for a new decision and further administrative proceedings is required.

**Other Contentions**

This case was denied at the fourth step of the sequential evaluation process based upon a finding that the plaintiff retains the ability to perform her past relevant work, which was "light." The plaintiff's first numbered contention is that "the administrative law judge's reported limitations would preclude Ms. Landers' performance of her past relevant work" (Docket Entry No. 11, p. 4). In determining that the plaintiff has a residual functional capacity (RFC) for "light" work, the ALJ adopted the assessments of the state agency reviewing physicians and psychologists. The state agency had previously accepted these same assessments in connection with its initial and reconsideration determinations. However, unlike the ALJ, the state agency determined that, although the plaintiff is unable to return to her past relevant work, she is capable of engaging in other work that exists in significant numbers in the national economy. The plaintiff cites no authority for the proposition that the ALJ was bound by the state agency's fifth-step denial decision and/or its implicit finding that the limitations found by the state agency consultants would preclude her past relevant work, and the magistrate judge is unaware of any such authority.

Next, the plaintiff argues that the ALJ's Finding No. 5 that she retains the ability to perform her past relevant work as a maid, custodian, and cashier is erroneous because the evidence shows that none of these jobs qualify as past relevant work due to insufficient earnings. "Past relevant work is work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it." 20 C.F.R. § 416.960(b)(1). § 416.972, in turn, defines "substantial gainful activity" as follows:

> (a) Substantial work activity. Substantial work activity is work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before.

10

> (b) Gainful work activity. Gainful work activity is work activity that you do for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized.

§ 416.974 provides guidelines for determining if work activity is "gainful." Work activity is generally deemed to be gainful if average monthly earnings were more than $500 for January of 1990, through June of 1999, and $700 for July of 1999, through December of 2000.

The record reflects that the plaintiff worked as a maid/custodian from July 20, 1998, through April 7, 1999, in the Environmental Services Department of Lourdes Hospital in Paducah, Kentucky (United States Catholic Conference) (AR, p. 88). During these eight months, she earned $8,230 ($5,428 in 1998, plus $2,802 in 1999). Therefore, the plaintiff's average monthly earnings were in excess of $1,000 and, hence, satisfied the earnings requirement. The magistrate judge concludes that the plaintiff's prior maid/custodian job at Lourdes constituted past relevant work, and the plaintiff's argument to the contrary is unpersuasive.

Next, the plaintiff argues that the evidence shows that she could not return to her past relevant work at Lourdes Hospital because the hypothetical contemplated that "[s]he's limited in handling and gross manipulation on the left to occasional" and data supplied by the plaintiff from the Dictionary of Occupational Titles (DOT) and Specific Occupational Selector Manual indicate that the job as generally performed in the national economy requires more extensive use of the upper extremities (AR, p. 700). The data are at AR, pp. 657-660. A claimant is deemed to be able to return to past relevant work if she can perform the job either as she actually performed it or as it is generally performed in the national economy. *Studaway v. Secretary*, 815 F.3d 1074, 1076 (6th Cir., 1987). In completing her Disability Report, the plaintiff specifically described her job at Lourdes as requiring no lifting, carrying, handling, grabbing, or grasping of big or heavy objects

11

because "maintenance did all that" (AR, p. 89). The magistrate judge concludes that the record adequately shows that the plaintiff's limited ability to use her left upper extremity would not preclude her past relevant work as she actually performed it. Furthermore, counsel is barred from first complaining upon judicial review about an incompatibility or perceived incompatibility between the vocational testimony and information contained in the DOT and similar publications if counsel did not explore this matter in a timely manner at the hearing. See *Martin v. Commissioner*, 2006 WL 509393 (6th Cir.).

The plaintiff's second numbered contention is that "the administrative law judge's evaluation of the credibility of Ms. Landers does not comply with the required legal standards and is also not supported by the evidence of record" (Docket Entry No. 11, p. 9). The plaintiff argues that, because there is no evidence of "addiction since the time that she filed her application for Supplemental Security Income benefits" in August of 2004, the ALJ erred in finding that her "testimony is found to be out of proportion" because her "main problem appears to be her addiction to multiple pain medications, alcohol and polysubstances"(Docket Entry No. 11, p. 10 and AR, p. 21). The magistrate judge concludes that the ALJ's decision identified a sufficient evidentiary basis for the ALJ's finding that the plaintiff remains "questionably sober," to-wit, "when treated at the emergency room on March 16, 2006, after she slipped and fell in the bath room, the medical intake records indicated that she drank socially. Also, at the hearing [on March 26, 2006] she admitted she was still drinking" (AR, pp. 21 and 24). The ALJ's decision further reflects that the ALJ's residual functional capacity (RFC) findings were based upon acceptance of the assessments of the state agency physicians and psychologists. The state agency consultants, in turn, based their assessments upon a finding that the plaintiff's chemical dependency

was in remission (AR, pp. 22-23). Therefore, any error with respect to the ALJ's suggestion that the plaintiff's "main problem" is ongoing substance abuse was, at worst, harmless.

The plaintiff third numbered contention is that "the administrative law judge failed to properly evaluate Ms. Landers' severe mental impairments" (Docket Entry No. 11, p. 12). The argument is premised upon treatment that the plaintiff received at Four Rivers Behavioral Health Center after the state agency consultants gave their assessments and the global assessment of functioning (GAF) scores assigned by the subsequent treating sources. The plaintiff argues that the ALJ's reliance upon the state agency assessments was stale in light of the subsequent evidence. The magistrate judge concludes that the plaintiff has failed to identify persuasive evidence of greater limitations because GAF scores are deemed to be subjective and have little bearing on the individual's ability to function in an occupational context. See *Kornecky v. Commissioner*, 2006 WL 305648. In any event, because we have already concluded that this matter must be remanded to the Commissioner for other reasons, the Commissioner will have an ample opportunity to revisit the plaintiff's updated medical records.

## RECOMMENDATION

The magistrate judge RECOMMENDS that this matter be REMANDED to the Commissioner for a new decision and further evaluation of the assessment of the plaintiff's treating physician, Laxmaiah Manchikanti, M.D., dated March 20, 2005, and for any further proceedings not inconsistent with this report and deemed necessary and appropriate by the Commissioner.

## NOTICE

Pursuant to 28 U.S.C. § 636(b)(1), any party shall have a period of ten (10) days, excluding intervening Saturdays, Sundays, and/or legal holidays pursuant to Fed.R.Civ.P. 6(a), from the date of notice of electronic filing within which to file written objections to the foregoing report with the Clerk of the Court.  Further and pursuant to Fed.R.Civ.P. 72(b), any party may file a response to objections filed by another party within ten (10) days, excluding Saturdays, Sundays, and/or intervening legal holidays, after being served with a copy of said objections.  A period of three days shall be added to each ten (10) day period above pursuant to Fed.R.Civ.P. 6(e).

The court shall not conduct a de novo review of objections that are general, conclusory, or merely adopt previous pleadings.  The original objections shall be sent to the Clerk of Court either electronically or by mail.  A copy of any objections and response thereto shall be served on the undersigned at Suite 330, 501 Broadway, Paducah, Kentucky, 42001 or via e-mail to w_david_king@kywd.uscourts.gov.  Failure of a party to file timely objections shall constitute a waiver of the right to appeal by that party.  *Thomas v. Arn*, 474 U.S. 140 (1985).